EFFIE HARRIS, by next Friend, Respondent, v. THE MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

**Kansas City Court of Appeals, March 31, 1890.**

Negligence: CONTRIBUTORY: DEMURRER TO EVIDENCE. Defendant's railroad had two tracks running east and west—the north one used by west-bound trains—the south one by east-bound trains. Plaintiff's father had prior to his employment by defendant worked near a railroad. He was employed in a gang building a fence on the north side of the two tracks. His part of the work was to carry posts scattered along on the south side of the two

tracks across them to the north side. He was working about two hundred feet west of a sharp curve which prevented a west-bound train on the north track being seen at a distance greater than that. Defendant was crossing back south after posts when he encountered an east-bound freight train on the south track and he stopped on the north track just inside of the south rail apparently waiting for the freight train to get by and apparently watching its movements only. While at this place and in this position, a passenger train from the east on the north track coming around the curve at a speed of thirty-five or forty miles an hour ran over and killed him. This was the deceased's third day's work at this place during which time trains had been constantly passing and the foreman had cautioned the men to be careful. *Held,—*

(1) That the death of the deceased was directly brought about by his own negligence. (*Distinguishing Gessley v. Railroad,* 32 Mo. App. 413.)

(2) That, though the foreman be regarded as vice-principal and was guilty of negligence in not placing out a watchman, deceased knew of such negligence and continued in the service without complaint.

(3) That it was *error* to overrule a demurrer to plaintiff's evidence.

*Appeal from the Johnson Circuit Court.*—Hon. Chas. W. Sloan, Judge.

Reversed.

*Adams & Buckner,* for the appellant.

(1) Where the facts of a case are undisputed, it is a question for the court to determine whether or not the facts proven constitute negligence. *Kelly v. Railroad,* 11 Mo. App. 1; *Yancy v. Railroad,* 93 Mo. 433; *Bell v. Railroad,* 86 Mo. 599; *Zimmerman v. Railroad,* 71 Mo. 476; *Lenix v. Railroad,* 76 Mo. 86; *Moody v. Railroad,* 68 Mo. 470. (2) Where the undisputed evidence shows a clear case of contributory negligence, the duty of the court is to take the case from the jury. *Lenix v. Railroad, supra,* and authorities above cited. (3) The act of deceased in standing upon the north

track, watching the train on the south track, and his failure to observe the approaching train, and in failing to be in a position where he could have seen it was *per se* an act of gross negligence. *Lenix v. Railroad*, 75 Mo. 86; *Moody v. Railroad*, 68 Mo. 470; *Railroad v. Beale*, 73 Pa. St. 501; *Schofield v. Railroad*, 8 Fed. Rep. 44; *Bell v. Railroad*, 72 Mo. 50. (4) There is no rule or law which required the defendant to provide a watchman to notify the deceased of the approach of trains, even if he had been at work upon the track, which he was not, but, even where a legislative act is violated, a person has no right to shut his eyes and ears and place himself in a position of danger. *Kelley v. Railroad*, 75 Mo. 138. (5) Certainly the duty of defendant to the traveling public is as great as towards its employes, yet it has been held that railroads were, not required, in the absence of a statute requiring it, to keep a watchman stationed at a highway crossing "no matter how dangerous." *Welsh v. Railroad*, 72 Mo. 451. (6) In a case where a flagman had been provided at a crossing, and afterwards withdrawn, it was held it did not relax the care on the part of the traveler. *McGrath v. Railroad*, 59 N. Y. 468. And the absence is immaterial if the traveler did not know of the custom to station one at the point in question. *Pa Kalinsky v. Railroad*, 82 N. Y. 424. (7) So in the case at bar no watchman was required to be kept either by law or by rule of the company. None had been kept while deceased was in the employ of the defendant. Knowing these things, it became one of the risks which deceased assumed when he entered the service of defendant. *Hathway v. Railroad*, 51 Mich. 253; *Cogney v. Railroad*, 69 Mo. 416. "If the danger is apparent," or "if the servant with full knowledge of the employer's way of conducting his business engage and co-operate in it, they voluntarily assume the risks." *Railroad v. Smithson*, 45 Miss. 212. (8) The deceased having

entered the service of defendant with knowledge that no watchman had been provided, or without any promise or inducement to lead him to believe that one would be supplied, respondent cannot recover, if deceased was killed for want of such watchman. *Hayden v. Mfg. Co.*, 29 Conn. 548; *McGlinn v. Brodie*, 31 Cal. 371; *Huddleston v. Machine Shops*, 106 Mass. 282; *Combs v. Cordage Co.*, 102 Mass. 585; *Railroad v. Thomas*, 51 Miss. 637; *Sullivan v. Mfg. Co.*, 113 Mass. 398; *Kroyn v. Railroad*, 32 Iowa, 361; *Muldowney v. Railroad*, 36 Iowa, 465; *Railroad v. Barber*, 5 Ohio St. 541; *Davis v. Railroad*, 20 ·Mich. 105; *Buzzell v. Laconia Co.*, 48 Me. 113; *Owen v. Railroad*, 1 Lans. 108; *Railroad v. Love*, 10 Ind. 556; *Thayer v. Railroad*, 22 Ind. 30; *Stone v. Mfg. Co.*, 4 Oregon, 52; *Frazier v. Railroad*, 38 Pa. St. 111; *Perry v. Marsh*, 25 Ala. 667; *Jones v. Yeager*, 2 Dill. 67; *Gibson v. Railroad*, 63 N. Y. 449; *Railroad v. Eddy*, 72 Ill. 138; *Railroad v. Britz*, 72 Ill. 257; *Dillon v. Railroad*, 3 Dill, 324; *Ladd· v. Railroad*, 119 Mass. 412; Pierce's Am. R. R. Law, p. 297; 1 Add. on Torts [Wood's Ed.] sec. 564; Shearman & Redf. on Neg., sec. 94; *Devitt v. Railroad*, 50 Mo. 305; *Hulett v. Railroad*, 67 Mo. 239; *Dale v. Railroad*, 63 Mo. 455; *Assop v. Yates*, 2 Hurl. & Nor. 768; *Dyner v. Leach*, 26 L. J. 221; s. c., 40 Eng. L. & E. 491; *Senior v. Ward*, 102 Eng. C. L. 385; *Griffiths v. Gidlow*, 3 Hurl. & Nor. 648; *Watling v. Oastler*, Law Rep. 6 Exch. 73; *Patterson v. Wallace*, 28 Eng. L. & E. 48; *Skip v. Railroad*, 24 Eng. L. & E. 396; *Seymore v. Maddox*, 16 Q. B. 316; *Wright v. Railroad*, 25 N. Y. 566; *Buzzell v. Mining Co.*, 43 Me. 113; *Thayer v. Railroad*, 22 Ind. 26; *Hayden v. Mfg. Co.*, 29 Conn. 548; *Railroad v. Barber*, 5 Ohio St. 541.

*Geo. W. Harrison* and *S. P. Sparks*, for the respondent.

(1) Morrison was a vice-principal, not a fellow servant, of deceased, as to acts which were the result

of the authority conferred upon him ; as he had the
power to employ and discharge, to control and direct
the men at work. *Railroad v. May*, 108 Ill. 288 ; s. c.,
15 Am. & Eng. R. R. Cases, 320 ; *Stephens v. Railroad*,
86 Mo. 231, *loc. cit.* 229 ; *Flynn v. Railroad*, 78 Mo.
195. ( *a* ) It follows that the negligence of Morrison
was the negligence of the railroad company. ( *b* ) The
first instruction given for respondent is an adoption of
one approved in *Railroad v. May, supra ; Railroad v.
Sullivan*, 43 N. W. Rep. 415. ( 2 ) At common law
the master assumed the duty toward the servant of
exercising reasonable care and diligence to provide the
servant with a reasonably safe place at which to work,
and, when the service required of an employe is of a
peculiarly dangerous character, it is the duty of the
master to make reasonable provisions to protect him
from the dangers to which he is exposed while engaged
in the discharge of his duty. *Railroad v. Fox*, 31 Kan.
587; s. c., 15 Am. & Eng. R. R. Cases, 325 ; *Gessley v.
Railroad*, 32 Mo. App. 413 ; 1 Thomp. Neg. 461 ; *Railroad
v. Fox*, 21 Pac. Rep. 797. ( *a* ) The second instruction,
given at the instance of respondent, was an adaption of
an instruction approved by this court, in *Gessley v.
Railroad, supra.* ( 3 ) In the circumstances of this
case it was the duty of the defendant's vice-principal
Morrison to have taken the precautions to have watched
or to have set some one to watch for the approach of
trains, and deceased had the right to become engrossed
in the work on the track and oblivious to the approach
of trains, and it was negligence in Morrison to leave
them in such great peril. *Gessley v. Railroad*, 32 Mo.
App. 413 ; *Erickson v. Railroad*, 43 N. W. Rep. 332 ;
1 Thomp. Neg., p. 461. ( 4 ) Harris and Magers were
surprised by great danger, were placed in imminent
peril by the fault of defendant, and it could not be
expected of them to choose with promptness the safest
method of escaping such dangers, and the ordinary rules

of contributory negligence are not applicable to them. *Adams v. Railroad*, 74 Mo. 553 ; 1 Thomp. Neg., p. 462. See leading article entitled "Negligence in Imminent Peril," 25 Am. Law Reg. 617, where all the cases are collected and the doctrine correctly stated by Wm. Colebrook, Esq. ( 5 ) It was not incumbent on plaintiff, thus showing the negligence of.Morrison in putting deceased to work in a dangerous place .without taking the ordinary precautions against such danger, to go further, and show that deceased was free from · negligence. *Buesching v. Gaslight Co.*, 73 Mo. 219. ( 6 ) The law out of regard to the instincts of self-preservation presumes that a person who has suffered death by a railroad accident was, at.the time of the accident, in the exercise of due care, and this presumption is not over-thrown by the mere fact of the injury. *Flynn v. Railroad*, 78 Mo. 195 ; *Buesching Case, supra.* ( 7 ) The *onus* was not on plaintiff to show in the circumstances of the case that deceased was not only injured by the negligence of defendant, but also that deceased himself had not been guilty of contributory negligence. *Swigert v. Railroad*, 70 Mo. 480. ( 8 ) The deceased's fault, if any there was, is not disclosed by the evidence, and the company is shown to have been in default. It devolves upon the defendant to show the want of proper care on the part of the person injured, and that by the exercise of proper care he would have escaped the injury. *Stepp v. Railroad*, 94 Mo. 229, *loc. cit.* 230 ; *O' Conner v. Railroad*, 94 Mo. 150, *loc. cit.* 158. ( 9 ) The propositions of law 1 and 2, appellant's brief, are fundamental but have no application to this case. Whether, under all the circumstances of the case, deceased was guilty of contributory negligence, was fairly submitted to the jury. ( 10 ) The third proposition of appellant's brief, " that it was *per se* negligence in deceased to be standing ( just inside the rail ) on north track, looking toward the passing freight train for an instant," is narrowing

the whole tragedy to a single act of deceased when in imminent peril. It is certain that the whistle was not sounded until the instant they were struck. *Parsons v. Yaeger*, 7 Mo. App. 594.

ELLISON, J.—Plaintiff is the daughter and only child of John Harris, who was killed by defendant's engine and cars on March 10, 1887. He did not leave a widow. The action is founded upon a petition declaring on defendant's negligence in not warning deceased of the approach of the train. The answer was a general denial and contributory negligence. There was a judgment for plaintiff and defendant appeals, assigning among other alleged errors that the court should have sustained the demurrer to the testimony.

The case as made out by plaintiff shows that deceased had lived in Warrensburg, and had, before entering defendant's service, worked in a mill at that place, near defendant's railway tracks, upon which trains were constantly passing. That he entered defendant's service as a day laborer, two days before the accident. That he was set to work at fence-building with a gang of fence-builders between Independence and Kansas City. The "gang" being in charge and under the orders of a foreman. Between Independence and Kansas City defendant has a double track running east and west. At the place where the work was going on there is a sharp curve, which prevents a train coming from the east towards Kansas City from being seen by a person on the track at a greater distance than two hundred feet. This was the least distance put by plaintiff's witnesses. There were posts lying scattered on the south side of the tracks, which were being used in building a fence on the line of the right of way north of the north track; that is, the posts on the south side of the tracks were being used in the construction of the fence on the north side of the track. Deceased, with a companion, was engaged in carrying

these posts across the two tracks, and, while he and his companion were returning to the south side for more posts, a freight train of twenty or more cars was passing east, at the rate of ten or twelve miles an hour, on the south track ; the south track being used by eastbound trains and the north track by west-bound trains. They stopped on the north track, just inside of the south rail, apparently waiting for the freight train to get by, and apparently observing its movements only.   While at this place and in this position, a passenger train from the east, on the north track, coming around the curve at a speed of thirty-five or forty miles an hour ran over and killed both deceased and his companion. Deceased began work at this place on the evening of the eighth and worked that evening, all of the ninth and up to eleven o'clock the morning of the tenth, the hour of his death.   During this time trains were constantly passing each way ; besides regular trains, there was an accommodation between the two cities.   The foreman had cautioned the men to be careful, though one of them testified he did not hear it.   Deceased knew there was no one placed as a watchman to give warning of an approaching train.

It is quite evident from this recital of the showing made by plaintiff that the death of deceased was directly brought about by his own negligence.   While it does not appear that he was carrying posts during all of the time he was working at the place of the accident, yet he was during the whole period working on the right of way where he could observe the trains as they passed in either direction.   He knew that trains were passing at frequent intervals ; that on the south track they passed east and on the north track they passed west ; that on the north track they would come around a curve a short distance from where he was working. Yet with this knowledge he stopped on the north track in such a position, either that he could not see in the

direction that trains would come, or allowed himself to become so absorbed in watching the passing freight train as to be oblivious to other matters. He was evidently not on the lookout for his safety, for he could easily have saved himself by clearing the track. Though allowing that he could not have seen the train more than two hundred feet away, and that it was approaching him at the rate of forty miles an hour, he would have had ample time to have escaped collision; a single step would have been sufficient. It must be borne in mind that there is no question made here as to negligence on the part of those in charge of the train. The whole negligence charged in the petition is upon the foreman of the fence laborers, and to such negligence plaintiff must be confined. *Ellis v. Railroad*, 17 Mo. App. 126, and cases cited.

We are, however, cited to the case of *Gessley v. Railroad*, 32 Mo. App. 413, where it was decided by this court in an opinion by HALL, J., that persons who are lawfully upon a railway track engaged in labor "have a right to become engrossed in their labor to such an extent that they may be oblivious to the approach of trains, relying, as they may, upon the duty imposed by law with reference to them" upon the railway company of active vigilance for their safety. That case is not applicable to this. The facts are unlike. Here deceased was not engrossed in his work. The most favorable thing that can be said of him is that he was waiting for the freight train to pass by, that he might proceed on after posts. But in thus waiting it was not necessary for him to stop on the north track, or, if he did, it was gross carelessness in him to so place himself that he could not see a train coming on the north track, knowing, as he must have known ( this being his third day's work at the place), of the frequency of trains from the one direction.

It is one of plaintiff's principal contentions that it was the foreman's duty to have warned him of the

approach of the train. Whether such warning should have been given by telling him that a train would pass at that time, or by placing a watchman to warn him, is not stated. If the former, it may well be answered that deceased had full knowledge of the great number of trains passing in one direction on this track, and it would have been idle to tell him, under these circumstances, of any particular train, especially in the light of the warning he had to be careful. If it is meant to contend that the foreman should have placed a watchman on the lookout, we may concede for present purposes ( though not so deciding ) that it was his duty to do so, yet deceased knew he had not performed that duty. He knew that there was no one upon whom he could rely to warn him, and with this knowledge he voluntarily put himself in the dangerous position.

It is familiar law that the master must furnish the servant with safe machinery with which to work, yet if he has not done so and the servant has knowledge of the defect and of its dangerous tendency, and yet voluntarily continues in the use of such machinery, he cannot recover damages for an injury resulting from such defect. *Devitt v. Railroad*, 50 Mo. 305 ; *Hulett v. Railroad*, 67 Mo. 239. This proposition is alike applicable to one who voluntarily continues, without objection, in the employment of the master with a knowledge of the dangerous or incompetent character of a fellow servant. *McDermott v. Railroad*, 87 Mo. 285. It is alike applicable to one who takes employment and engages to do service under another who bears the relation of vice-principal to the master. *McDermott v. Railroad, supra.* So, notwithstanding that deceased and the foreman were not fellow servants ( *Moore v. Railroad*, 85 Mo. 588 ), yet deceased knowing of the foreman's negligence in not providing a watchman continued in the service without complaint. In doing so he *took upon himself* the risk of injury *resulting from*

*such negligence.* See authorities collected by defendant's counsel. The *McDermott case, supra,* deals directly with this question and the justness of the rule could not well be better or more clearly demonstrated than is done by Judge HENRY in that case.

Our opinion, therefore, is, that under the evidence plaintiff is clearly not entitled to recover. This disposition makes it unnecessary to discuss other points presented. The judgment will be reversed. All concur.